## ESCROW AGREEMENT

**WHEREAS**

1. Pursuant to a charterparty (the **Charter**) dated 3 November 2021 made between Transatlantica Commodities Pte Ltd, as **Owner**, and Hanwin Shipping Limited, as **Charterer**, the Owner agreed to charter the m.v. "Tac Imola" (the **Vessel**) to the Charterer and the Charterer agreed to take the Vessel on charter.

2. The Owner and the Charterer (and their respective permitted assigns) are referred to in this Agreement as the **Parties** and each a **Party**.

3. On 3 December 2021, a fire was reported in the Vessel's cargo holds (the "**Incident**"). The Vessel deviated as a result and the Parties agree that the deviation ended on 18 January 2021 at 00:01.

4. The Owner and the Charterer dispute whether hire is payable by Charterers during the deviation; alternatively Owners may have a claim in damages for the same amount against Charterers for loss of hire (the "**Disputed Amount**").

**IT IS AGREED AS FOLLOWS**

5. Nothing in this Agreement shall be construed as an admission of liability by either Party, and this Agreement is without prejudice to all and any other rights which the Parties may have under the Charter.

6. Nothing in this Agreement shall be construed as limiting the rights of the Owners to seek further security for the claim relating to the Disputed Amount or any other claim arising out of or relating to the Incident.

7. The Charterer shall pay into an escrow account the sum of USD800,000 (the "**Escrow Amount**") as partial security for the Disputed Amount within 3 Hong Kong working days of the date of the signing of this Agreement.

7A. Subject to Paragraph 6 above, upon the signing of this Agreement, the Owner agrees and undertakes to: -

   a. refrain from withdrawing the Vessel, instructing, or otherwise causing the Vessel to be withdrawn or causing discharge operation to be delayed, hindered or prevented by reason of the Disputed Amount;

   b. refrain from arresting, attaching or otherwise detaining any assets in the ownership or control of the Charterers or their associated or affiliated companies in respect of the Disputed Amount.

8. The Parties shall appoint the Hong Kong office of Ince and Co. (the **Escrow Agent**) to hold the Escrow Amount.

9. The Charterer shall pay the Escrow Amount (without any bank charges, deduction or withholding or set off of any nature whatsoever) to the account (the **Account**) referred to below:

**Exhibit A**

| | |
|---|---|
| Account Name: | Ince & Co. |
| Bank: | HSBC |
| Account No: | ▉▉▉▉▉▉▉▉▉▉ |
| Sort Code: | |
| SWIFT Code: | ▉▉▉▉▉▉▉ |
| IBAN Code: | |

10. The sum received in the Account in respect of the Escrow Amount will bear interest (if any) at such rate as may from time to time apply to such sum in the Account.

11. Any and all payments out of the Account in respect of the Escrow Amount and/or any other sums received into the Account or any interest accrued on the Escrow Amount in the Account shall be made only in accordance with the following terms:

   a. The Escrow Agent is unconditionally and irrevocably authorised and bound to comply with the joint written instructions signed by an authorised signatory of each of the Parties within 14 days of the receipt of the instructions in relation to payments out of the Account in respect of the Escrow Amount and/or any other sums received into the Account or any interest accrued on the Escrow Amount in the Account provided that such instructions specify the amount of each payment to be made from the Account, the person to whom each payment should be made, the bank account details of each such person and any other co-ordinates required by the Escrow Agent to effect such payment.

   b. Otherwise, the Escrow Amount, and any other sums received into the Account and any interest accrued on the Escrow Amount in the Account may be released only against receipt by the Escrow Agent of a certified copy of an arbitration award or an order or final judgment of the High Court of Justice in London that is not capable of further appeal or in respect of which any time limit for appeals has expired, or a settlement agreement between the parties, to such person or persons as is or are specified in such arbitration award, order, judgment or settlement agreement within 14 days of the receipt of the award, order, judgement or settlement agreement provided always that neither the Escrow Agent nor the Bank is prevented or restrained by any award or Court order from making such release.

12. The Parties further agree:

   (a) that the Escrow Agent's only duty under this Agreement shall be to hold and deal with the Escrow Amount, any other sums and any interest accrued on the Escrow Amount in the Account in accordance with the express terms of this Agreement;

   (b) that the Escrow Agent shall not be deemed to have any fiduciary obligations to either the Owner or the Charterer in relation to this Agreement;

   (c) that the Escrow Agent shall be entitled to rely on and to act in accordance with such emails or written instructions which it receives from the Parties in accordance with this Agreement and which the Escrow Agent believes to be genuine;

(d) that the Escrow Agent shall not be liable to the Parties or to anyone else for any claims, costs, losses, damages or liabilities whatsoever as a result of anything that the Escrow Agent may do, purport to do or omit to do in connection with any of the arrangements referred to in or contemplated by this Agreement save and except for any direct costs incurred by either of the Parties as a direct result of the gross negligence, fraud or wilful misconduct of the Escrow Agent in connection with this Agreement;

(e) to reimburse, on a several basis, the Escrow Agent for any costs properly and reasonably incurred or expended by it under or in connection with this Agreement;

(f) that in case the Escrow Agent will have to pay negative interest to the Bank on any sum received in the Account, the Escrow Agent will invoice such negative interest to the Parties in equal parts who shall be liable for their own share as several debtors towards the Escrow Agent for immediate payment of any such negative interest following receipt of the relevant invoices;

(g) that if any dispute arises in respect of any of the arrangements described in or contemplated by this Agreement, the Escrow Agent will be entitled - after giving three (3) days prior written notice of its intention to do so to the Parties - to pay the Escrow Amount and any interest accrued on the Escrow Amount in the Account into the High Court of Justice in London and thereafter to notify the Parties that it has done so;

(h) to provide the Escrow Agent with such further information or documentation as it may from time to time reasonably require in connection with the arrangements provided for in this Agreement including (without limitation) any information or documentation that the Escrow Agent is required to obtain in order to satisfy its client identification procedures and other regulatory requirements;

(i) that any payment by the Escrow Agent will be made as soon as reasonably practicable after receipt by the Escrow Agent of instructions in accordance with this Agreement;

(j) that all payments by the Escrow Agent under this Agreement shall be made by telegraphic transfer with any bank charges incurred in making each such payment being for the account of the party receiving the payment;

(k) that payment instructions made in accordance with this Agreement shall be deemed to be a full and adequate discharge by the Escrow Agent of its obligations to arrange payments under this Agreement;

(l) that, notwithstanding the appointment of the Escrow Agent pursuant to this Agreement and without prejudice to the Escrow Agent's obligations to the Parties pursuant to this Agreement, the Escrow Agent and any of its partners, managers and other employees may act as legal advisers and attorneys to the Charterer and any of their respective affiliates, associates, parents and subsidiaries for all purposes whatsoever, including, without limitation, in connection with the current dispute under the Charter and the Charter generally;

(m) that the Escrow Agent shall have fulfilled its obligations and this Agreement shall terminate without any liability on the part of the Escrow Agent when the Escrow Amount and any interest accrued on the Escrow Amount in the Account have been

     paid out in accordance with Paragraph 11 above, or paid into the High Court of Justice in London pursuant to Paragraph 12(g) above;

  (n) the Escrow Agent shall not be, in any circumstances, under any duty or obligation to check whether any document, or any signature thereon, or content thereof, given pursuant to this Agreement is correct, genuine or valid. The Escrow Agent may assume that any statement made in instructions given pursuant to this Agreement is correct and the Escrow Agent shall not be liable for any loss occasioned to any party by virtue of any such statement being incorrect. The Escrow Agent shall be entitled to rely on any such statement and on any communication believed by it to be genuine and to have been signed by persons duly authorised to do so.

13. Replacement Escrow Agent

13.1 Should the Escrow Agent's appointment terminate (whether by removal, termination or through the passage of time) the Owner and the Charterer shall jointly appoint a replacement escrow agent.

13.2 If the Owner and the Charterer fail to agree on a replacement escrow agent within five (5) Hong Kong business days from receipt of notice of the removal or termination of the appointment of the Escrow Agent, the Escrow Agent shall thereafter instruct the Bank to transfer the Escrow Amount (together with any interest) then held by the Escrow Agent in the Account to a reputable replacement escrow agent based in Hong Kong and nominated by the Escrow Agent, who shall hold such sums pursuant to an escrow agreement similar to the terms and conditions hereof and who Owner and Charterer shall oblige to apply such funds in accordance with the terms of that agreement.

13.3 Any replacement escrow agent shall deliver to the Owner and Charterer a written instrument accepting such appointment and the terms and conditions of the replacement escrow agreement, and thereupon it shall be entitled to receive the Escrow Amount (together with any interest) from the Escrow Agent.

13.4 Upon receipt of a written notice from Owner and Charterer, should Paragraph 13.1 apply, the Escrow Agent shall instruct the Bank to transfer the Escrow Amount (together with any interest) then held by the Escrow Agent in the Account to the replacement escrow agent appointed by the Owner and the Charterer. Upon issuance of such instructions to the Bank, the Escrow Agent shall have no further duties, responsibilities or obligations hereunder and no party shall have any claim against the Escrow Agent in connection therewith under this Escrow Agreement.

13.5 The Escrow Agent shall not be obliged to issue instructions to the Bank to transfer any monies where to do so could, in the sole opinion of the Escrow Agent, cause the Escrow Agent to be in breach of any law or any of its professional or regulatory obligations including but not limited to the solicitors' accounts rules and regulations or any applicable anti-money laundering laws or regulations; but in such case, as well as the case where continuing to hold the monies standing to the credit of the Account would in the sole opinion of the Escrow Agent cause it to be in breach of any law or obligation referred to above, the Escrow Agent may apply to the High Court of England and Wales, on notice to Owner and Charterer, for leave to pay all of the funds standing to the credit of the Account into the Court Funds Office (England and Wales).

14. Notices and communications

14.1 Any notice or other communication to be given under the Agreement shall be:

(a) in writing or in readable electronic form;

(b) in the English language; and

(c) sent by email to the email address, specified in Paragraph 14.3 below of the party due to receive the notice or communication, marked for the attention of that party's representative as described in Paragraph 14.3 below.

14.2 A notice or other communication given under this Agreement shall be deemed to have been received if sent by email, when confirmation of its delivery has been recorded by the sender's computer, provided that if deemed receipt would otherwise occur before 0900 on a business day in Hong Kong, the notice or other communication shall be deemed to have been received at 0900 on that business day in Hong Kong, and if deemed receipt would otherwise occur after 1700 on a business day in Hong Kong, or deemed receipt would otherwise occur on any day that is not a business day in Hong Kong, the notice or other communication shall be deemed to have been received at 0900 on the next business day in London.

14.3 The details of the parties for the purposes of this Paragraph 14 are:

14.3.1 For the Owner:

Attention:
Address:
Email:

14.3.2 For the Charterer:

Attention:   Justin of Hanwin Shipping limited

Address:    ROOM 802, MAGNOLIA PLAZA, NO.777 HONGQIAO ROAD, SHANGHAI, CHINA

Email:      public@hanwinshipping.com

14.3.3 For the Escrow Agent:

Attention:   Loh Wai Yue/Will Chan

Email:      waiyueloh@incegd.com/ willchan@incegd.com

15. Nothing in this Agreement shall expressly or impliedly limit or exclude the Escrow Agent's rights under applicable law.

16. This Agreement may be executed in any number of counterparts, and by each party to it on separate counterparts. Each counterpart is an original, but all counterparts shall together constitute one and the same instrument.

17. No amendment or variation of the Agreement shall be effective unless it is in writing and executed by authorised signatories on behalf of each of the Owner, the Charterer and the Escrow Agent.

18. The legally binding agreement (**Agreement**) constituted by acceptance of these terms shall be governed by and construed in accordance with English law, and disputes arising under and in connection to this Agreement shall be resolved in arbitration according to clause 83 of the Charter.



Signed for and on behalf of the **Owner**

Name: Yakiv Kutkovskyy
Title: The Director
Date: 3rd March 2022

Signed for and on behalf of the **Charterer**

Name: Justin Cao
Title: Vice General Manager
Date: 3rd March 2022

Acknowledged and agreed on ___3rd March___ 2022 for and on behalf of Ince and Co.

Name:   Loh Wai Yue
Title:   Partner