IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
IN ADMIRALTY

| | |
|---|---|
| Hanwin Shipping Limited, | ) |
| Plaintiff, | ) Civil Action No. 1:22-cv-11182-RWZ |
| v. | ) |
| Transatlantica Commodities Pte Ltd., | ) |
| Defendant, *in personam*, | ) |
| and | ) |
| The Master of the M/V TAC IMOLA | ) |
| Garnishee. | ) |
| Transatlantica Commodities Pte Ltd., | ) |
| Counter-Plaintiff, | ) Civil Action No. 1:22-cv-11182-RWZ |
| v. | ) |
| Hanwin Shipping Limited, | ) |
| Counter Defendant, | ) |
| and | ) |
| The Master of the M/V TAC IMOLA | ) |
| Garnishee. | ) |

**ANSWER TO COMPLAINT AND COUNTERCLAIM**

Transatlantica Commodities Pte Ltd. ("Transatlantica") answers the complaint of Hanwin Shipping Limited ("Hanwin") and counterclaims as follows:

## ANSWER TO COMPLAINT

### Summary of Action

The Summary of Action paragraph appears to contain Hanwin Shipping Limited's characterization of the Action it brings as well as states legal conclusions which Transatlantica need neither admit nor deny. However, to the extent an Answer to the averments therein is required, they are denied.

### Jurisdiction and Venue

1. Admitted.

2. Denied.

3. This paragraph states a legal conclusion which Transatlantica need neither admit nor deny.

4. Admitted.

### Parties

5. Admitted.

6. Admitted.

7. Admitted that Garnishee is the master of the vessel M/V TAC IMOLA ("Vessel"), otherwise denied.

### Facts

8. Admitted.

9. Admitted that the cargo caught fire and that stowage was the responsibility of Hanwin.

10. Admitted that the damage was the fault of Hanwin.

11. Admitted that Hanwin has paid some of the discharge costs but as set out in the Counterclaim, failed to pay others.

12. Denied.

13. Denied.

14. Denied.

## COUNT I

### "Breach of Maritime Contract"

15. Transatlantica repeats its foregoing responses.

16. Admitted that Hanwin entered into the charter party with Transatlantica, which is a maritime contract, otherwise denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied that Hanwin is entitled to judgment.

## COUNT II

### "Application for Maritime Attachment and Garnishment Under Supplemental Admiralty Rule B"

21. Transatlantica repeats its foregoing responses.

22. This paragraph states a legal conclusion which Transatlantica need neither admit nor deny.

23. Denied.

24. Denied.

## AFFIRMATIVE DEFENSES

Transatlantica incorporates the following Affirmative Defenses into each and every Cause of Action contained in its Answer to Hanwin's Complaint as follows:

## FIRST AFFIRMATIVE DEFENSE

Hanwin's complaint fails to state claims upon which this Court may grant relief, including because they are compulsory counterclaims in the actions which Transatlantica has brought against Hanwin and in which Hanwin has filed appearances, namely, *Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Limited et al*, No. 1:22-cv-01275-RDB (U.S. District Court, District of Maryland) and *Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Limited et al*, 1:22-cv-03348 (U.S. District Court, District of New Jersey).

## SECOND AFFIRMATIVE DEFENSE

This claim as well as Transatlantica's counterclaim is under the terms of the charter party between Transatlantica and Hanwin subject to the charter party between the two for the M/V TAC IMOLA and should be stayed or dismissed in favor of that arbitration.

## THIRD AFFIRMATIVE DEFENSE

Hanwin has failed to mitigate its alleged damages.

## FOURTH AFFIRMATIVE DEFENSE

Hanwin has breached its contract with Transatlantica.

WHEREFORE, Transatlantica respectfully requests that this Court to dismiss this action with costs to Transatlantica.

## COUNTERCLAIM

Transatlantica brings this counterclaim against Hanwin as follows:

### Jurisdiction and Venue

1. This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Fed. R. Civ. P. 9(h).  This action further is pursuant to the Federal Arbitration Act, 9 U.S.C. §8 in that London maritime arbitration is required by the charter party for the M/V TAC IMOLA between Transatlantica and Hanwin, as more fully set out herein.

## The Parties

2. Transatlantica is a company located in Singapore, which charters and subcharters ocean-going vessels.

3. Hanwin is a carrier of ocean cargo with its principal place of business in Shanghai, China, which chartered the M/V TAC IMOLA from Transatlantica.

## Facts

4. On or about November 3, 2021, Hanwin chartered the M/V TAC IMOLA ("Vessel") from Transatlantic according to a London charter party, with agreed rates and providing for arbitration in London of disputes.  The charter party further required Hanwin to pay for marine fuel ("bunkers") necessary for the power of the Vessel and extended to Transatlantic the right to assert a maritime lien *in rem* for against any cargoes, and all subfreights and sub-hires for any sums due to them under the Charter Party, on cargo loaded on the Vessel.

5. Hanwin caused the Vessel to be loaded in China with certain cargo, including the Cargo, and directed the Vessel to sail from China to the Port of Newark, New Jersey, then to the Port of Albany, and then to the Port of Baltimore for discharge.

6. Somewhere during the part of the voyage across the Pacific, between China and the Panama Canal, the plywood cargo caught fire.  After some of the cargo was discharged at Newark, Hanwin directed the Vessel to Albany, where the burnt plywood cargo was placed in

the Vessel's Hold 2 and the remaining, undamaged cargo, including the Cargo, placed in other holds.  Hanwin delayed the discharge of Hold 2 for more than three weeks, and then finally discharged the distressed Hold 2 cargo at the port of Coeymans, New York.  After this discharge, Hanwin directed the Vessel for unloading at Baltimore.

7. As the result of Hanwin's delay in unloading the cargo aboard the Vessel, including the Cargo, there is a significant sum of contractual charges due to Transatlantica from Hanwin, as demanded below.  Hanwin further failed and refused to pay for the discharge of the Vessel at Baltimore, forcing Transatlantica to pay for that discharge.  Hanwin has refused to pay these charges, which Transatlantica properly is owed under the charter party with Transatlantica.

8. Before Hanwin had served the maritime garnishment writ apparently issued by this Court, Transatlantica sold the bunkers to a third party, Millinery Shipping.  Before service of the writ, Hanwin, by counsel, communicated the fact of the sale to Hanwin, by counsel.  Nevertheless, Hanwin proceeded wrongly with the attachment.

### Count I – Breach of Maritime Contract

9. Transatlantica incorporates the above paragraphs as if fully set forth herein.

10. Hanwin has breached its maritime contract with Transatlantica as set out above.  Despite repeated demand, Transatlantic remains unpaid.

11. Transatlantica therefore demands judgment  and countersecurity for at least **$4,567,272.74** (charter and related hire and costs of $3,741,068.12, plus $676,204.62 paid to Canton Terminals, Baltimore for discharge of the Vessel, for which Hanwin failed to pay, plus contractual interest, attorneys' fees and costs of at least $150,000, as set out more fully below.

### Count II – Wrongful Attachment

12. Transatlantica incorporates the above paragraphs as if fully set forth herein.

13. Hanwin wrongfully attached the bunkers aboard the TAC IMOLA, causing Transatlantica damages including attorneys fees.

14. Transatlantica therefore demands judgment, as set out more fully below.

### **Prayer for Relief**

WHEREFORE, Transatlantica prays that in security for the London maritime arbitration which Transatlantic will bring pursuant to its charter party with Hanwin for the M/V TAC IMOLA:

A. That this Court stay this case but not the requirement pursuant to Supplemental Rule E(7) that Hanwin post counter-security, pending decision in the London arbitration which the Vessel charter party requires;

B. That upon posting of security by Transatlantica, this Court stay Hanwin's case and order that Hanwin post full counter-security for Transatlantica's claims, in the full amount of Transatlantica's claims here, namely, for at least **$4,567,272.74** (charter and related hire and costs of $3,741,068.12, plus $676,204.62 paid to Canton Terminals, Baltimore for discharge of the Vessel, for which Hanwin failed to pay, plus contractual interest, attorneys' fees and costs of at least $150,000);

B. That in confirmation of the arbitral award, that the award be recognized by this Court and judgment on the award be issued in favor of Transatlantica and against Hanwin in the amount of Transatlantica's expected demand in arbitration, for at least **$4,567,272.74** (charter and related hire and costs of $3,741,068.12, plus $676,204.62 paid to Canton Terminals, Baltimore for discharge of the Vessel, for which Hanwin failed to pay, plus contractual interest, attorneys' fees and costs of at least $150,000, plus damages of at least $50,000 for wrongful attachment); and

   C. That this Court award Transatlantica such other and further relief that this Court deems just and proper.

Dated: July 27, 2022.

           Respectfully Submitted,

         Transatlantica Commodities Pte Ltd.,
            By its attorneys,

| | |
|---|---|
| | /s/ J. Stephen Simms |
| Samuel P. Blatchley (BBO No. 670232) | J. Stephen Simms |
| Eckland & Blando LLP | Simms Showers LLP |
| 22 Boston Wharf Road, 7th Floor | 201 International Circle |
| Boston, MA 02210 | Baltimore, Maryland 21030 |
| (617) 217-6936 | Ph: 410-783-5795 |
| sblatchley@ecklandblando.com | Fax 410-510-1789 |
| | jssimms@simmsshowers.com |

## CERTIFICATE OF SERVICE

  I, Samuel P. Blatchley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                /s/ J. Stephen Simms