# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
*In Admiralty*

| | |
|---|---|
| Hanwin Shipping Limited, | * |
| *Plaintiff* | * |
| v. | * Civil No. 1:22-cv-11182-RWZ |
| Transatlantica Commodities Pte Ltd., | * |
| *Defendant, in personam* | * |
| and | * |
| The Master of the M/V Tac Imola | * |
| *Garnishee* | * |

## PLAINTIFF HANWIN'S OPPOSITION TO
## DEFENDANT TRANSATLANTICA'S MOTION FOR COUNTERSECURITY

NOW COMES Plaintiff Hanwin Shipping Ltd., and in opposition to Defendant Transatlantica Commodities Pte. Ltd.'s ("Transatlantica") Motion for Countersecurity (ECF No. 30, the "Motion"), states as follows:

### PRELIMINARY STATEMENT

Both sides agree that this action should be stayed in favor of the parties' ongoing London arbitration. *See* ECF No. 30 at 3. However, Transatlantica has offered no real justification for its request that Hanwin post nearly $3.6 million in countersecurity. Indeed, as set forth below, both parties have asserted claims comprising approximately $4 million in damages. To date, Transatlantica has already obtained $3,232,622.31 in security from Hanwin, by virtue of five Rule

B actions filed by Transatlantica across the U.S. and Panama, as well as Hanwin's voluntary deposit of funds into an escrow account. By contrast, Transatlantica has posted only $965,000 to secure Hanwin's commensurate counterclaim. Requiring Hanwin to post an additional $3.5 million is not only inequitable, as it would widen the disparity between the parties, but it would grossly oversecure Transatlantica's own claim.

Even setting aside the equities, Transatlantica's Motion should be denied because Transatlantica's counterclaim does not seek to attach any of Hanwin's assets, and its request for countersecurity is not in furtherance of releasing Hanwin's property.

For these reasons, Transatlantica's request for countersecurity should be denied, and this matter should be stayed pending the parties' ongoing London arbitration.

## FACTS

**1. The Parties' Underlying Dispute Regarding the M/V TAC IMOLA**

The facts concerning the parties' underlying dispute may be taken from Hanwin's First Amended Verified Complaint (ECF No. 32), filed earlier today. Hanwin's claim against Transatlantica arises from a cargo fire aboard the bulk carrier cargo ship *M/V Tac Imola* (the "Vessel"). Specifically, Hanwin and Transatlantica entered into a charter party, on or about November 3, 2021, for Hanwin to charter the Vessel from Transatlantica, as disponent owners. On or about November 24-25, 2021, the Vessel took on a large load of plywood, along with other cargo, for carriage to Baltimore, Maryland. At some point during the voyage, the plywood cargo caught fire as a result of improper stowage, allowing the cargo to shift and build friction between itself, other cargo, and the Vessel itself. As a result of the fire, the now-damaged cargo required special handling to discharge from the Vessel, the Vessel had to make unscheduled port calls to

discharge portions of the damaged cargo; and port terminals have charged significantly more for the special handling to offload the damaged cargo.

The cargo fire was caused by Transatlantica's lack of due diligence in loading, stowing, and securing the cargo, and Transatlantica's failure to properly load, stow, and secure the cargo constituted a breach of the charter party between Hanwin and Transatlantica.

As set forth in the Verified Complaint, Hanwin has suffered damages in the amount of approximately $4,179,225.00. *See* ECF No. 31 at ¶ 16.

**2. Transatlantica's Serial Abuse of Rule B Process**

Transatlantica's position, as disponent owner under the charterparty for the *M/V Tac Imola*, is effectively that Hanwin should have paid charter hire during the period of the various diversions that vessel had to undertake to handle and offload the damaged cargo, or related payments to third parties, such as the terminal operator in Baltimore, together with interest and attorneys' fees. Hanwin's position is that those charges are for Transatlantica's account due to Transatlantica's lack of due diligence in loading, stowing, and securing the cargo from the very outset of that vessel's voyage.

But however that dispute plays out in London arbitration, the parties have not agreed regarding an appropriate security and countersecurity package that would place the parties on equal footing. This has prompted Transatlantica to engage in serial Rule B attachments in the United States and in Panama against ships chartered not only by Hanwin, but by other companies – not alter egos – associated with Hanwin, as set forth in the below chart:

| Case No. | Jurisdiction | Date Filed | Status |
|---|---|---|---|
| 22-cv-1275 | District of Maryland | 5/27/22 | Transatlantica's writs of attachment against third party garnishees, including Canton Terminals, threatened continued cargo discharge operations in Baltimore.<br><br>Intervenor cargo receiver Hawthorne Industrial Products, Inc. applied for and received a court order on July 7, 2022 permitting continued cargo discharge operations of the M/V TAC IMOLA and the M/V INDIGO SPICA. *See* Exhibit 1.<br><br>No property has been attached in this proceeding and it is subject to dismissal. |
| 22-cv-3348 | District of New Jersey | 6/1/22 | After Transatlantica attached the fuel bunkers aboard a third vessel, the M/V INDIGO SPICA, Hanwin posted $195,857.22 in respect of Transatlantica's disputed claims. The parties then filed a consent motion to stay the action pending London arbitration which was entered by the Court on June 10,2022. *See* Exhibit 2. |
| 22-cv-1983 | Southern District of Texas | 6/17/22 | Transatlantica filed yet another action in the Southern District of Texas under Rule B, attaching funds committed to third parties, paid by Hanwin to American Shipping and Chartering Corp., its port agent for services to be provided to Hanwin-chartered vessels calling in ports in the United States. ASCC has appeared and, on July 25, 2022, filed its Answer and Motion to Vacate or Modify the Rule B attachment, but the Texas court has not set a Rule E hearing as yet. *See* Exhibit 3. |
| N/A | Panama | 7/15/22 | We understand that bunkers aboard the *M/V Belknight* were attached in or about July 15, 2022. Hanwin is contesting the attachment on the grounds that this vessel was chartered by a separate company as to which Transatlantica has no claim.<br><br>By order dated July 29, 2022, the Panamanian Court permitted the *M/V Belknight* to depart for New Orleans, upon Hanwin Shipping Company Limited's provision of $856,871.46. *See* Exhibit 4. |

| Case No. | Jurisdiction | Date Filed | Status |
|---|---|---|---|
| 22-cv-2454 | Eastern District of Louisiana | 8/2/22 | Transatlantica filed an action under Rule B, attaching funds held by garnishee Coastal Cargo Company, L.L.C., who is alleged to hold deposits from or on behalf of Hanwin for the discharge of the *M/V Belknight*.<br><br>On 8/4/22, Hanwin entered a restricted appearance and moved to vacate the writ of attachment and asked the court to set countersecurity under Rule E(7)(a). An emergency hearing was held on 8/8/22, following which the Louisiana Court ordered both sides to post $400,000 in security. *See* Exhibit 5. |

Hanwin has already posted $995,857.22 to an escrow account maintained by Ince & Co. in respect of the London arbitration under escrow agreements made between the parties. In Texas, while there is a dispute over whether the funds attached are the property of Hanwin, Transatlantica's litigation has caused payments made to Hanwin's port agent that are committed to third parties to be attached in the amount of $979,893.63. *See* Exhibit 3 at ¶ 6 ("ASCC holds $979,893.63 in funds paid to ASCC by Hanwin in a separate bank account from its main accounts payable account"). Two weeks ago, payment of additional security in respect of the *M/V Belknight* was posted in the amount of $856,871.46. *See* Exhibit 4 at p. 2 (Panama Order). And just this week, Hanwin posted $400,000 of security in a new Rule B action filed by Transatlantica in Louisiana. *See* Exhibit 5 at p. 1.

Based on the foregoing attachments and prior agreements to post security, Transatlantica has attached funds and received security to date in the total amount of at least $3,232,622.31

against its claims.[1] By contrast, Transatlantica has not voluntarily agreed to post security for any part of Hanwin's claims against it arising from the *M/V TAC IMOLA* voyage. Instead, following an emergency conference, this Court compelled Transatlantica to post security in the amount of $564,283.35 in order for the Vessel to leave port. *See* ECF No. 26. Further, in the Louisiana action, the court required Transatlantica to post countersecurity in the amount of $400,000. *See* Exhibit 5.

In sum, Hanwin remains undersecured on its claims against Transatlantica, in the amount of $3,214,941.65 (consisting of the $4,179,225.00 in damages set forth in the Amended Verified Complaint, less the $964,283.35 posted by Transatlantica in this proceeding and the Louisiana action).

## ARGUMENT

1. **Standard for Countersecurity**

Supplemental Admiralty Rule E(7)(a) provides that under certain conditions, when a defendant in an admiralty suit has posted security for release of property attached in that action, the defendant may assert a counterclaim and demand the plaintiff to provide countersecurity for damages alleged in the counterclaim. If the court authorizes countersecurity, then proceedings on the original claim "must be stayed until this security is given," subject to the Court's discretion. The trial court "possesses broad discretion in deciding whether to order countersecurity" when the conditions of Rule E(7)(a) are met, to be guided by the two principles of "plac[ing] the parties on an equality as regards security" and preventing "burdensome costs on a plaintiff that might prevent

---

[1] The amount of security Transatlantica has received is also already over $1 million more than the amount it asserted as a claim in the actions pending in New Jersey and Maryland, where Transatlantica sought only $1,984,913.38 in respect of its claims. *See* Exhibit 3 (ASCC Answer) at ¶ 3.d.

-6-

it from bringing suit." *Result Shipping Co. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995).

### 2. Countersecurity Is Not Appropriate Where Hanwin Has Already Posted Security Well in Excess of Transatlantica for the London Arbitration.

As an initial matter, countersecurity should not be granted and would not place the parties "on an equality as regards security." As set forth above, Transatlantica has engaged in serial abuse of maritime attachment process against Hanwin's assets and ships over the last three months to obtain security for the London arbitration. It has instituted Rule B actions in four United States District Courts, as well as a maritime attachment in Panama. Transatlantica has already attached property of or received security from Hanwin for over **$3.2 million** for the London arbitration. Granting Transatlantica's request for a *further* $3.5 million in countersecurity in this case would result in an aggregate of approximately $6.7 million attached or secured funds against Transatlantica's $4.5 million claim.

By contrast, Transatlantica has failed to voluntarily post *any* security for Hanwin's claims. Following the issuance of court orders in this action and in Louisiana, Transatlantica has only posted a total of approximately $965,000 in security for the arbitration – approximately $565,000 posted as security in this case, and $400,000 posted on August 10 as countersecurity in Louisiana. The parties' claims are commensurate; Transatlantica in its Counterclaim (ECF No. 28) claims approximately $4.5 million in damages, including $150,000 in attorneys' fees and interest, and Hanwin's claim against Transatlantica totals approximately $4.2 million.

Because Transatlantica has already received or attached $3.2 million from Hanwin in security for the London Arbitration, and Hanwin has only received $965,000 in security from Transatlantica, granting Transatlantica's request for a *further* $3.5 million in countersecurity from

Hanwin would be an egregious offense against the principle that countersecurity seeks to vindicate. Namely, that countersecurity should be granted only to "place the parties on an equality as regards security." *See Result Shipping Co. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995). The parties are already on grossly unequal footing where Transatlantica's current security for the London arbitration is more than triple Hanwin's security. Transatlantica has no good cause to compel *any* countersecurity where such grant would only aggravate that inequality. Consequently the Court should deny Transatlantica's request for countersecurity.

   **3. Countersecurity is Not Appropriate Because it is Not Sought to Release Plaintiff Hanwin's Property**

A key tenet of "placing the parties on an equality as regards security" when considering a grant of countersecurity, is whether the defendant requests countersecurity in order to release the plaintiff's property. If the defendant has by its counterclaim arrested or attached the plaintiff's property, then posting countersecurity for the release of plaintiff's property places the parties on equal footing, each having posted security to release its respective assets. If the request for countersecurity is not in furtherance of releasing plaintiff's property, then it places the parties on an unequal footing and should be avoided: "[t]he court should be reluctant to order countersecurity **if the plaintiff does not, by the posting of countersecurity, seek to release its property from the counterplaintiff's custody**." *Afram Lines Int'l, Inc. v. M/V Capetan Yiannis*, 905 F.2d 347, 349 (11th Cir. 1990) (emphasis added). *See also* 7 A J. Moore, Moore's Federal Practice E–738 (2d ed. 1983) ("Compelling the posting of any security by a party who has no property whose release he is attempting to secure is contrary to our judicial system."). Courts in the First Circuit have upheld this same principle; the District Court in *Goudy & Stevens, Inc. v. Cable Marine, Inc.*, 665 F. Supp. 67, 72 (D. Me. 1987) cited with approval language that a trial court "should be

particularly reluctant to compel a party to post countersecurity where that party is not attempting to secure the release of any property."

Here, Defendant Transatlantica posted security of approximately $564,000 in order to release bunker fuel attached by Plaintiff Hanwin within this district. Transatlantica's counterclaim does not seek to attach any of Hanwin's assets, and its request for countersecurity is not "to release [Hanwin's] property from the counterplaintiff's custody." *Afram Lines*, 905 F.2d at 349. Likewise, the principle that security should not be granted where there is no property sought to be released is violated where Transatlantica's request would compel Hanwin to post security where Transatlantica has not attached any property of Hanwin within the District. The guiding principle of countersecurity to put the parties on equal footing would be disturbed by Transatlantica's request and should be denied.

4. **Countersecurity is Not Appropriate Where Transatlantica Could Not Have Brought its Claim *in Rem* or *Quasi in Rem* Within the District**

Even if countersecurity *were* otherwise appropriate, the Court should not grant it (or should not require Hanwin to post more countersecurity than Transatlantica has posted in security), where Transatlantica could not have brought its counterclaim *in rem* or *quasi in rem* within this District. Courts have found that compelling countersecurity in excess of the security posted by a defendant is facially inappropriate in such cases:

> Second, the court should determine whether the counterplaintiff could initially have brought its claim *in rem* or *quasi in rem*. Where the counterplaintiff could not have proceeded in this manner, there seems little justification for ever requiring a larger bond on the counterclaim than is required in the original action.

*Afram Lines Int'l, Inc. va. M/V Capetan Yiannis*, 905 F.2d 347, 350 (11th Cir. 1990) (internal citations omitted).

In *Afram*, the Eleventh Circuit reversed as an abuse of discretion the District Court's order of countersecurity in an amount greater than the security the defendant posted to release its property on the original claim. The guiding principle, again, is that the parties should be on an equal footing with respect to security – and where a defendant could not have brought its counterclaim *in rem* or *quasi in rem* against the plaintiff, it is unfair to make the plaintiff post potentially unlimited security on a counterclaim when the plaintiff could only compel defendant to post security up to the amount of property actually attached or arrested.[2]

In this case Transatlantica has not identified any assets of Hanwin's within the district which would be subject to attachment *in rem* or *quasi in rem* on Transatlantica's counterclaim.[3] Therefore Transatlantica could not have brought its counterclaim *in rem* or *quasi in rem* against Hanwin in the District of Massachusetts. Consequently, ordering Hanwin to post any countersecurity (or compelling it to post countersecurity above the amount Transatlantica has already posted) would go against the weight of precedent and fail to vindicate the goal of putting the parties on an equal basis for security, and the Court should deny Transatlantica's request.

## CONCLUSION

In sum, while the Court enjoys broad discretion in deciding whether to order countersecurity on Transatlantica's counterclaim, that broad discretion should be guided by putting the parties on equal footing with respect to security. Accordingly, under the circumstances presented here, no countersecurity is appropriate given that Transatlantica has already received

---

[2] Conforming to this principle, in the Louisiana action, Hanwin requested countersecurity in an amount equal to the security Hanwin itself posted – not the full amount of Hanwin's claim.

[3] Indeed Plaintiff's counsel is unaware of any such assets within the District; upon information and belief both parties are foreign shipping interests and any property within the United States would be related to transient shipping activities.

security in the amount of $3.2 million from Hanwin in these cases, against Hanwin's $965,000 in security from Transatlantica. Further, as *Afram* counsels, a court should be reluctant to order countersecurity where, as here, countersecurity is not sought to release plaintiff's attached property. The same case held that a district court abuses its broad discretion where countersecurity is ordered in an amount greater than the original security posted by the defendant.

Hanwin respectfully requests that the Court deny Transatlantica's motion for countersecurity, and stay this action pending the London arbitration, or in the alternative, limit any amount of countersecurity posted to the amount already posted by Transatlantica as security in this action.

Respectfully submitted August 11, 2022

/s/ Todd D. Lochner, Esq.
Todd D. Lochner
*Pro Hac Vice*
tlochner@boatinglaw.com
Christopher McNally (BBO # 687998)
cmcnally@boatinglaw.com
Lochner Law Firm, P.C.
91 Main Street, 4th Floor
Annapolis, MD 21401
(443) 716-4400
*Attorneys for the Plaintiff*
*Hanwin Shipping Limited*

CERTIFICATE OF SERVICE

I, Todd D. Lochner, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Todd D. Lochner